1475-15

COURT OF CRIMINAL APPEALS

ORIGINAL

PETITION FOR DISCRETIONARY REVIEW

WITH A PETITION

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 20 2015

Abel Acosta, Clerk

HENRY DORSEY, Appellant Pro Se

V.

THE STATE OF TEXAS

Trial Case No. 1370868
182nd Judicial District Court
of Harris County Texas

Appellate No. 14-14-00718-CR
Appellate Court - Fourteenth
District Court of Appeals

Trial Judge: The Honorable
Jeahhine Barr

PARTIES:

Henry Dorsey  #1950821
Connally Unit
899 FM 632
Kenedy, TX  78119
    APPELLANT

The State of Texas

FILED IN
COURT OF CRIMINAL APPEALS

NOV 20 2015

Abel Acosta, Clerk

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| IDENTITY OF PARTIES | 1 |
| INDEX OF AUTHORITIES | 3-4 |
| STATEMENT OF THE CASE | 5 |
| STATEMENT OF FACTS | 7-8 |
| PRAYER | 17 |
| CERTIFICATE OF SERVICE | 17 |

## INDEX OF AUTHORITIES

| | PAGE |
|---|---|
| Bullcoming v. H.M. | 10 |
| Anderson v. Sirmons | 14 |
| Battenfileld v. Gibson | 15 |
| Eads v. State | 16 |
| Md. v. Craig | 9,10 |
| Pointer v. Tex | 10 |
| Gerstein v. Pugh | 10 |
| Ky. v. Stincer | 10 |
| U.S. v. Carthen | 10 |
| Del. v. Fensterer | 10 |
| Olden v. KY. | 11 |
| Davis v. Ala.. | 11 |
| U.S. v. Treacy | 11 |
| U.S. v. Vegamolina | 11 |
| U.S. v. Ramos-Cruz | 11 |
| Herrera v. State | 11,12 |
| Strickland v. Washington | 12,13 |
| Rompilla v. Beard | 13 |
| Sonnier v. Quarterman | 13 |
| Harries v. Bell | 13 |
| Hook v. Workman | 13 |
| Outten v. Kearney | 14 |
| Miller v. Martin | 14 |
| Anderson v. Sirmons | 14 |

<u>INDEX OF AUTHORITIES - cont.</u>

PAGE

Robinson v. Schriro                      14

Lawhorn v. Allen                      14

Williams v. Taylor                    15

Jones v. Ryan                      15

U.S. v. Rodriguez                   15

U.S. v. Stevens                     15

<u>STATUTES:</u>

Article 37.05                      16

## STATEMENT OF THE CASE

Henry Demond Dorsey, Defendant/Appellant

1. Mr. Dorsey was indicted for the first degree felony offense of murder on April 11, 2013. The State alleged that the offense occurred on December 9, 2012. Clerk's Record p.11.

2. The jury returned a guilty verdict on August 22, 2013 for murder. C.R. p.459; RR Vol.5. p.62, ln 13-19.

3. Punishment went to the jury, which assessed a 55 year TDCJ sentence. C.R. p.479; RR Vol.7 p.4, ln 11-16. An affirmative finding of a deadly weapon, namely a gun, was entered onto the judgment. CR p.479.

4. The trial court certified Mr. Dorsey right to appeal on April 26, 2014. CR p.482.

5. Notice of Appeal was timely filed on April 26, 2014. CR p.483.

## ISSUES PRESENTED

1.  Whether the trial court erred by violating Mr. Dorsey's right to confrontation of the medical expert witness who actually the autopsy of the decedent under applicable Federal and Texas Confrontation Clause provisions, rather than her supervisor who merely attended the autopsy, although the supervisor reviewed and approved the final report?

2.  Whether trial counsel provided ineffective assistance of counsel during the punishment phase of the trial by resting and closing and not presenting any mitigation evidence?

3.  Whether the verdict was truely unanimous.

## STATEMENT OF FACTS

Mr. Dorsey offers the following statement of facts in narrative form, with necessary record references contained later in this brief.

In the early morning hours of December 9, 2012 a fight occurred inside an after hours night club. This fight later spilled out in the parking lot of the club. There was a general melee going on. Lots of pushing and shoving, name calling, and the like. At one point, an african-american male with hair braids allegedly pulled a gun from his waist band area and began shooting into the crowd. One person, Timothy Powell, was apparently shot multiple times, and died at the scene. Other persons were also injured. The appellant Mr. Dorsey, also received an apparent gunshot wound.

At trial, the State introduced a surveillance or scene video which supposedly captured the shooting. The video showed an african-american male with hair braids shooting multiple times into the crowd fighting outside the club. An arresting officer testified that he believed that Mr. Dorsey's appearance at that time was consistent with "that of the person shown on the video shooting. Several eyewitnesses to the shooting said that Mr. Dorsey "looked like" the shooter, and one witness even offered a 50% level of certainty of identification. Although no witness testified that he/she actually saw Mr. Dorsey shoot anyone that early morning.

The State introduced the surveillance or scene video, multiple alleged eyewitnesses, detective, crime scene unit investigators, and the medical examiner's testimony and report to support its belief that Mr. Dorsey was the shooter and that Mr. Powell had

died.  No gun was ever recovered, No DNA, No Fingerprints.

Over trial counsel's objection, the trial court admitted the autopsy report, even though the testifying witness did not actually perform the autopsy.  Although she was present during the autopsy and made corrections to and signed off on the final report.

On the basis of this evidence, the jury returned a guilty verdict.  The jury poll following the guilty verdict does not appear to be conclusive, as two jurours did not directly affirm their respective verdicts.  However, neither party objected, and the trial judge continued on towards the punishment hearing.

Trial counsel offered no mitigation evidence during punishment.  Following the closing arguments of each party, the jury then retired for deliberation.  Later, the jury returned with a punishment verdict of 55 years TDCJ.

## ISSUE ONE WITH AUTHORITY

Whether the trial court erred by violating Mr. Dorsey's right to confrontations of the medical expert witness who actually the autopsy of the decedent under applicable Federal and Texas Confrontation Clause provisions, rather than her supervisor who merely attended the autopsy.  Although the supervisor reviewed and approved the final report?

In the case at bar, the State called Dr. Mary Auzalone, Assistant Medical Examiner of the Harris County Institute of Forensic Sciences, to testify at trial.  (RR Vol.3, p.238, ln 12).  She did not actually perform the autopsy of the decedent in this

case, although the autopsy was conducted under her direct supervision. She testified she was present during the autopsy, made various corrections to the report, and then co-signed the autopsy report as the supervisor/reviewer when the report was completed. (RR Vol. 3, p.242;ln 1-7).

Trial counsel properly objected to the admission of the autopsy report, the related photos, and to the expert testimony of this witness under Mr. Dorsey's confrontation clause rights. (RR Vol.3, p.248, ln23 thru p.252, ln 22). The trial judge overruled trial counsel's objections, and noted for the record that Dr. Auzalone was present during the autopsy, though she did not actually perform the autopsy. (RR Vol.3, p. 250, ln 23-25; p.252, ln 5-7, 12-13; and 21-22).

The autopsy report was testimonial in nature. There is no contention that the medical doctor who actually performed the autopsy was unavailable (though she resided and worked in the Chicago, Illinois area at the time of trial). The trial court erred by allowing this report in as evidence as well as Court of Appeals abused its discretion by denying this error.

## STANDARD

The appellant didn't have the right to cross-examine the expert who actually done the test.)).

The sixth amendment's confrontation clause provides a criminal defendant the right to directly confront adverse witnesses. See Md. v. Craig, 497 U.S. 836, 846 (1990) "[F]ace-to-Face confrontation enhance the accuracy of factfinding by reducing the risk that

a witness will wrongfully implicate an innocent person.") See also _Bullcoming v. H.M._, 131 S.Ct. 2705, 2716 (2011) [The] clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides fair enough opportunity for cross-examination). The sixth amendment provides in pertinent part that "in" all criminal prosecutions, the accused shall enjoy the right to be confronted with the witness against him. See _Pointer v. Tex._, 380 U.S. 400, 403 (1965).

The Confrontation Clause applies only to that portion of a criminal proceeding classified as the trial. See _Gerstein v. Pugh_ 420 U.S. 103, 119-20 (1975) (adversary).

See case _Craig_, 498 U.S. at 845; see also _Ky. v. Stincer_, 482 U.S. 730, 737 (1987) (Confrontation right designed to promote truth-finding function of trial)."

See case _U.S. v. Carthen_, 681 F.3d 94, 99 (2nd Cir. 2012) ("Confrontation Clause prohibition against hearsay do not strictly apply" in proceedings not part of criminal prosecution).

The Confrontation Clause protects a defendant's right to cross-examine adverse witnesses, because the clause only provides for the "opportunity [to] cross examin[e]." See cases _Del. v. Fensterer_, 474 U.S. 15, 20 (1985) (per curiam) "The Confrontation Clause guarantees an opportunity for effective cross-examination not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish).

When cross-examining a witness, the defendant must be permitted to test both the witness's credibility and the witness's know-

ledge of the material facts in the case.

See cases Olden v. Ky., 488 U.S. 227, 231 (1988) (per curiam) (Confrontation Clause violated when defendant accused of kidnapping and rape not permitted to cross-examine complainant regarding co-habitation with boyfriend).

See case Davis v. Ala., 415 U.S. 308, 316-17 (1974) (Confront-ation Clause violated when defendant not permitted to cross-examine witness regarding possible prejudice and bias that may have caused faulty identification of defendant).

See case U.S. v. Vega Molina, 407 F.3d 511, 523-24 (1st Cir. 2005) (Confrontation Clause violated because district court's refusal to allow defendant to cross-examine co-conspirator about possibility of being framed prevented defendant from presenting defense).

See case U.S. v. Treacy, 639 F.3d 32, 44-45 (2nd Cir. 2011) (Confrontation Clause violated when court precluded cross-examin-ation refused to show credibility of witness's.)

See case U.S. v. Ramos-Cruz, 667 F3d 487, 503 (4th Cir. 2012) (Confrontation right allows defendant to "ferret out falsehoods and expose inconsistencies in a witness's testimony).

The 14th Court of Appeals of Houston in appellant's case in its opinion on October 27, 2015 on page 4 stated appellant has not argued that Herrera is incorrect or should be revisited in light of more recent authority. See Herrera v. State, 367 SW3d 762, 773 (Tex. App. Houston 14th Dist. 2012, No pet.).

Appellant Dorsey ask this Court to revisited Herrera v. State with the more recent authority because the cases he used in this

petition is against what the constitution requires.  He ask this Court to use its power to give its opinion on this ground.

It has been determined by this Court that an autopsy photograph is not a testimonial statement.  <u>Herrera v. State</u> <u>Id</u>.

This ground of error should be granted for <u>relief</u>.


## ISSUE TWO WITH AUTHORITY

Whether trial counsel provided ineffective assistance of counsel during the punishment phase of the trial by resting and closing and not presenting any mitigation evidence?

<u>Facts in the Record</u>

After the conclusion of the State's punishment case, the State rested.  <u>(RR vol.6, p.162, ln 1-2)</u>.  The trial court then turned to the defense and remarkably, trial counsel then also rested <u>(RR Vol.6, p.164, ln 16-17)</u>.  Trial counsel called no witnessed during the punishment phase of the trial (by they either fact based to contradict the State's witnesses alleging the impact of the victim's death or to show the limitations on their claimed knowledge of the deceased, gang related testimony, or even merely character witnesses to humanize and to support the defendant).  Bottom line:  there was absolutely no mitigation evidence presented by trial counsel.

As a hole in the record see <u>(RR vol. 6, p.166, ln 14-15; RR Vol. 6, p.166, ln 2 thru p.175, ln 3; RR Vol.6,p.175 ln 2-3)</u>.

Trial counsel's failure to emphasize the defendant's good character traits during closing argument at the punishment phase of a trial has been found to be ineffective assistance of counsel.

How can this Court overlook <u>Strickland v. Washington</u>, 466 U.S.

688 (1984) the defendant must prove that his trial conunsel's representation was deficient and that the deficient performance was so serious that it deprived him of a fair trial. <u>Id. at 687</u>. Counsel's representation is deficient if it falls below an objective standard of reasonableness. <u>Id at 688</u>. A deficient performance will only deprive the defendant of a fair trial if it prejudices the defense. <u>Id at 691-92</u>.

Appellant is clearly saying had counsel brought in mitigation witnesses the outcome may have been different, he may not have gotten the same judgment sentence. Every person under the constitution has a right to effective assistance of counsel at every stage.

The failure to present mitigation evidence at the punishment phase of the trial has been held by numerous courts to be a classic example of ineffective assistance of counsel. See <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005).

See case <u>Sonnier v. Quarterman</u>, 476 F3d 349, 358 (5th Cir. 2007)(Counsel's failure to undertake more extensive discussions with defendant's family and acquaintance was ineffective assistance despite defendant's objection to further discussions.

See case <u>Harries v. Bell</u>, 417 F3d 631, 638 (6th Cir. 2005) (Counsel's failure to investigate and present mitigating evidence of defendant's mental illness was ineffective assistance.

See case <u>Hooks v. Workman</u>, 689 F3d 1148, 1207-08 (10th Cir. 2012)(Counsel's failure to investigate reasonably available family history evidence that might have mitigated defendant's sentence was unreasonable.)

See case <u>Outten v. Kearney</u>, 464 F3d 401, 419-23 (3rd Cir. 2006)(But for counsel's failure to present mitigating evidence of defendant's excruciating life history, reasonable probability of different sentence.)

Similarly, if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing, the adversarial process itself becomes presumptively unreliable.

See case <u>Miller v. Martin</u>, 481 F3d 468, 473 (7th Cir. 2007) (Counsel's choice not to present any mitigating factors or objection and to remain silent at sentencing hearing for no apparent reason warranted presumption of prejudice).

See case <u>Anderson v. Sirmons</u>, 476 F3d 1131, 1148 (10th Cir. 2007)(Counsel's failure to present mitigating evidence at sentencing of death penalty trial was ineffective assistance because failure allowed prosecution to successfully argue there was nothing to diminish defendant moral culpability eventhough such evidence was readily available.)

See case <u>Robinson v. Schriro</u>, 595 F3d 1086, 1111-13 (9th Cir. 2010)(Counsel's failure to presentmitigating evidence was ineffective assistance because there was reasonable probability sentence would have been different with mitigating evidence.)

See case <u>Lawhorn v. Allen</u>, 519 F3d 1272, 1292-93 (11th Cir. 2008)(Counsel's failure to present significant mitigating evidence of defendant's family history, mental health and drug abuse at sentencing was ineffective assistance because reasonable chance jury would not have received death penalty.)

In the State brief page of its opinion pg.34, the record is devoid of anything to indicate that any mitigation witnesses existed, much less that such witnesses were available or would have been helpful to the defense on sentencing had trial counsel presented them.

This is the appellant argument no investigation took place at all in his behalf.

Please see case Battenfield v. Gibson, 236 F3d 1215, 1235 (10th Cir. 2001)(ineffective assistance because counsel failed to present mitigating evidence at penalty phase).

Please see case Williams v. Taylor, 529 U.S. 362, 396 (2000) (Counsel's failure to investigate and present substantial mitigating evidence during sentencing phase of capital murder trial was prejudicial.)

Please see case Jones V. Ryan, 583 F3d 626, 646-47 (9th Cir. 2009)(Counsel's failure to investigate and present mitigating evidence prejudicial because it gave sentencing judge inaccurate view of defendant's life.)

This honorable court can use its power to review claims of ineffective counsel on appeal only in exceptional circumstances. See other circuits cases.

U.S. Rodriquez, 675 F3d 48, 55-56 (1st Cir. 2012) (Claim of ineffective counsel reviewed on appeal only in exceptional circumstances.)

U.S. v. Stevens, 487 F3d 232, 245 (5th Cir. 2007) (Claim of ineffective counsel reviewed on appeal only in exceptional circumstances.

This Honorable Court should review this Error and Grant relief.

## ISSUE NUMBER THREE WITH ARGUMENT

Whether the verdict was truely unanimous.

### Facts in the Record

The jury was then properly polled.  However, two jurors did not answer affirmatively that the guilty verdict was indeed their respective verdict.  (RR Vol. 5, p.64, ln 3-5; p.65, ln 11-18).

The jurors were not instructed to retire again to consider their verdict as required by Art. 37.05, to be fair, no party objected.  The trial judge also merely continued on with the standard trial procedure.  There appears to be no other reference to a less than unanimous verdict anywhere in either the court clerk's record or the court's reporter's record.

A verdict must be certain, consistent, and definite, it may not be conditional, qualified, speculative, inconclusive, or ambiguous.  See case Eads v. State, 598 Sw2d 304, 306 (Tex.Crim.App. 1980)  It is the duty of the trial judge to reject an informal or insufficient verdict, call to the attention of the jury the informality or insufficiency, and have the same corrected their consent, or send them out again to consider their verdict.  Id.  The polling was inconclusive.  The trial judge should have sent the jury panel out again to consider their verdict, but clearly failed to do so.

The Court of Appeals didn't even go into detail on this ground and denied it.  Article 37.05 was not followed.  This ground should be granted on the merits.

## PRAYER

Petitioner prays for relief deem just.


## DECLARATION

"I, Henry Dorsey, TDCJ #1950821, presently incarcerated in the TDCJ-CID at the Connally Unit in Karnes County, Texas, declare under penalty of perjury under Chapter 132 of Texas Civil Practices and Remedies Code and 28 U.S.C. § 1746, that the facts stated in this Petition for Discretionary Review are true and correct and that I placed this document in the prison mailbox on this date."

"Executed on this the _15_ day of November 2015."

_Henry Dorsey_

Henry Dorsey, pro se


## CERTIFICATION OF SERVICE

I certify that on this the _11th_ day of November 2015, I served the following parties with a true and correct copy of this PDR by mail (U.S. Postal) through the prison mailbox in a postage paid package to the address written below:

Court of Criminal Appeals
P.O. Box 12308, Capitol Station
Austin, Texas 78711
    Attn:  Abel Acosta

Sincerely submitted;

_Henry Dorsey_

Henry Dorsey  #1950821

Affirmed and Memorandum Opinion filed October 27, 2015.



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00718-CR

---

## HENRY DEMOND DORSEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1370868

---

## MEMORANDUM OPINION

We consider three questions in this appeal from a conviction for murder: (1) whether the admission of evidence violated appellant's rights under the Confrontation Clause; (2) whether the verdict was truly unanimous; and (3) whether appellant was denied the effective assistance of trial counsel. Finding no error in connection with any of these stated issues, we affirm the judgment of the trial court.

## BACKGROUND

A fistfight broke out near the entrance to an after-hours nightclub. One of the men involved in the fight pulled out a gun and fired multiple shots into the crowd. Two of the bullets struck and killed the complainant. Surveillance footage showed that the complainant had played no role in the fight and had merely been standing in the background. The shooter ran off, but he was later caught and identified as appellant.

## CONFRONTATION CLAUSE

The complainant's body was sent to the medical examiner's office, where an autopsy was performed by a new doctor participating in a forensics pathology fellowship program. The fellow did not testify at appellant's trial. Testimony was elicited instead from an assistant medical examiner who had supervised the fellow. The assistant medical examiner testified that she was present for the complainant's autopsy, she reviewed the fellow's autopsy report, and she co-signed the autopsy report after making corrections to it.

At trial, the State offered into evidence a collection of photographs that were taken during the autopsy. Appellant objected to the admission of these photographs, claiming that the absence of the fellow deprived him of his rights under the Confrontation Clause. Continuing with the same reasoning, appellant also argued that the autopsy report should be excluded in the event that the State sought its admission. The trial court overruled the objection and admitted the photographs, which were then published to the jury. The State never offered the autopsy report into evidence.

In his first issue, appellant contends that the admission of certain evidence violated his rights under the Confrontation Clause. We review a trial court's ruling

2

admitting or excluding evidence for an abuse of discretion. *See McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). Under this standard, the trial court's ruling will be upheld if it is reasonably supported by the record and correct under any applicable theory of law. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We give the trial court almost complete deference in determining historical facts, but we review de novo the trial court's application of law to those facts. *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

The Sixth Amendment's Confrontation Clause provides that a defendant in a criminal prosecution "shall enjoy the right . . . to be confronted with the witnesses against him." *See* U.S. Const. amend. VI. This right applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. *See Crawford v. Washington*, 541 U.S. 36, 50–51 (2004). Whether an out-of-court statement is testimonial is a question of law for the court to decide. *See De la Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

Appellant styles this issue by asserting that "the trial court erred by violating [his] right to confrontation of the [fellow] who actually performed the autopsy." Appellant addresses several points within this issue, beginning with a complaint about the supposed admission of the complainant's autopsy report. But, as we stated above, the State did not offer the autopsy report into evidence, and the trial court did not admit it. Thus, even assuming that the autopsy report contained testimonial statements, there was no violation of the Confrontation Clause.

Appellant then addresses the autopsy photographs, which were actually admitted into evidence. But, in his own brief, appellant concedes that his trial counsel's objection to the admission of these photographs "should fail upon appellate review." "This is so," appellant explains, "because this Court has held that an autopsy photograph is not a testimonial statement." *See Herrera v. State*,

367 S.W.3d 762, 773 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("An autopsy photograph, however, is not a testimonial statement.") (citing *Wood v. State*, 299 S.W.3d 200, 214–15 (Tex. App.—Austin 2009, no pet.)). Appellant has not argued that *Herrera* is incorrect or should be revisited in light of more recent authority. Therefore, applying our prior precedent, we hold that appellant's rights under the Confrontation Clause were not violated when the trial court admitted the autopsy photographs.

Appellant finally complains in very general terms about the testimony of the assistant medical examiner, who observed the autopsy, but did not perform it. The argument is without merit because appellant never objected to any portion of the assistant medical examiner's live testimony. He objected instead to the admission of certain exhibits. Without a timely and specific objection, appellant forfeited this complaint. *See* Tex. R. App. P. 33.1; *Thacker v. State*, 999 S.W.2d 56, 61 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

Moreover, even if he had objected, the argument would still fail because the assistant medical examiner was questioned about her own observations and opinions, not those of the fellow who performed the autopsy. Thus, the trial court did not erroneously admit testimonial hearsay in violation of appellant's rights under the Confrontation Clause. *See also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009) (noting that the Confrontation Clause does not demand "that everyone who laid hands on the evidence must be called").

## UNANIMOUS VERDICT

In his second issue, appellant complains about an irregularity during the jury polling process.

4

When the jury returned its verdict, the trial court asked the jurors to affirm that they had all voted to find appellant guilty. Collectively, the jurors answered, "Yes." Appellant then asked for the jurors to be polled individually. The poll happened as follows:

CLERK: [J.L.], is this your verdict?

JUROR: It is.

CLERK: [J.R.], is this your verdict?

No [J.R.]?

[S.G.], is this your verdict?

JUROR: It is.

CLERK: [A.N.], is this your verdict?

JUROR: It is.

CLERK: [J.P.], is this your verdict?

JUROR: It is.

CLERK: [R.G.], is this your verdict?

JUROR: Yes.

CLERK: [D.V.], is this your verdict?

JUROR: Yes.

CLERK: [R.D.], is this your verdict?

JUROR: It is.

CLERK: [R.B.], is this your verdict?

JUROR: Yes.

CLERK: [K.P.], is this your verdict?

JUROR: Yes.

CLERK: [S.P.], is this your verdict?

JUROR: It is.

CLERK: And [S.M.], is this your verdict?

JUROR: Yes.

5

COURT: That's only 11.

Who did not answer? Who was not polled? What's your name, sir?

JUROR: [R.V.].

COURT: What was your juror number in the panel?

JUROR: Fifty-five.

CLERK: Fifty-five, [R.V.], is this your verdict?

COURT: All right. So, members of the jury, we are going to recess for the day and have you come back Monday morning. We'll start on punishment on Monday morning. . . .

Appellant contends that the trial court ran afoul of Article 37.05, which provides that the jury must retire again to consider its verdict if any juror, when polled, answers that the verdict is not his own. *See* Tex. Code Crim. Proc. art. 37.05. Instead of calling for a recess, appellant argues that the trial court should have retired the jury because "two jurors did not respond affirmatively to the polled question." Appellant appears to be referring to J.R., who was called second by the clerk, and R.V., who was called last. It is clear, however, that J.R.'s name was called inadvertently. His name is marked on the strike list and he could not have been an actual member of the jury. Twelve other names were called, including R.V.'s, and each of those twelve jurors spoke on the record.

The court reporter did not record a verbal or nonverbal response from R.V. when he was polled. However, the trial court continued the proceedings as though R.V. had made an affirmative response, and appellant did not object to R.V.'s response or nonresponse.

A defendant must timely object to error in the jury polling process, as error of this type is subject to forfeiture. *See Barnett v. State*, 189 S.W.3d 272, 277 (Tex. Crim. App. 2006) (concluding that a defendant had forfeited any error by failing to object when the trial court asked improper questions during the jury polling

6

process). Because appellant did not object when R.V. was polled, he forfeited any claim that the trial court failed to comply with Article 37.05. *Id.*

Even if appellant had objected, his claim would still fail because the trial court's obligation to retire the jury is triggered only when a juror answers that a verdict is not his own. *See Llorance v. State*, 999 S.W.2d 866, 869 (Tex. App.— Houston [14th Dist.] 1999, no pet.) (holding that a juror's procedural question did not amount to an answer in the negative). Here, the record does not reflect that R.V. gave a negative answer. The tenor of the trial court's closing remarks suggests instead that R.V. gave an affirmative nonverbal answer that his verdict was in accord with the other eleven jurors. We conclude that appellant's complaint is without merit.

## INEFFECTIVE ASSISTANCE CLAIM

Appellant also contends that the assistance of his trial counsel was constitutionally ineffective. In two separate issues, each relating to the punishment phase of his trial, appellant complains that counsel presented no mitigation evidence and counsel's closing argument merely recited the evidence produced by the State.

We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 688 (1984). Under *Strickland*, the defendant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. A deficient performance will only deprive the defendant of a fair trial if it prejudices the defense. *Id.* at 691–92. To demonstrate prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make

the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that counsel's actions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to counsel's strategy, we will not conclude that the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the defendant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *See McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994).

8

Moreover, it is not sufficient that the defendant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *See Mata*, 226 S.W.3d at 430. Rather, to establish that counsel's acts or omissions were outside the range of professionally competent assistance, the defendant must show that counsel's errors were so serious that he was not functioning as counsel. *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

We begin with appellant's complaint that his trial counsel produced no mitigation evidence during the punishment phase of trial. To prevail on such a claim, the record must affirmatively demonstrate that mitigation witnesses were available to testify and that their testimony would have benefited the defense. *See Wilkerson v. State*, 726 S.W.2d 542, 551 (Tex. Crim. App. 1986); *Wade v. State*, 164 S.W.3d 788, 796 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The record is silent on these points. Appellant did not file a motion for new trial or otherwise establish that mitigation evidence existed. His complaint is therefore without merit.

In a related issue, appellant also complains about counsel's performance in closing arguments. During his argument to the jury, counsel openly confessed that he "simply chose not to put on a case for you in punishment." Counsel then sympathized with the complainant's family and expressed regret that the complainant had been caught in the fray of a shooting. Counsel said that appellant was still a human being though, not a monster, and counsel implored the jury to choose its own sentence, without offering a recommended sentence.

In his brief, appellant argues that counsel's performance was deficient because counsel recited the State's evidence and never emphasized appellant's own good character traits. But, as we mentioned earlier, the record does not contain any mitigation evidence that counsel could emphasize. Furthermore, the

9

record is silent as to counsel's reasons and strategies during closing argument. We could not deem counsel constitutionally ineffective without speculating as to his motivations, which we are not permitted to do. *See Lumpkin v. State*, 129 S.W.3d 659, 665 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Appellant has not shown that his counsel's performance fell below the range of reasonable professional judgment, or that he was prejudiced by his counsel's performance. *See Jagaroo v. State*, 180 S.W.3d 793, 800 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (rejecting ineffective assistance claim where counsel sympathized with the complainants during closing arguments); *see also Martin v. State*, 265 S.W.3d 435, 447 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (explaining that counsel may reasonably choose to recite facts that the jury would have remembered anyways so that counsel might convince the jury to put aside those facts with rhetorical devices such as empathy).

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
Justice

Panel consists of Chief Justice Frost and Justices Christopher and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).